PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL GOZA, | ) | |
| | ) | CASE NO. 1:10CV00675 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| ROBERT WELCH, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Respondent. | ) | **ORDER** [Resolving ECF No. 1] |

The matter before the Court is Michael Goza's Petition for a Writ of Habeas Corpus. In considering the Petition, the Court has reviewed the Report and Recommendation of the United States magistrate judge, Goza's Objections, the relevant portions of the record and the governing law. For the reasons provided below, the Court adopts the Report and Recommendation, with modifications, overrules Goza's Objections, and denies the Petition in its entirety.

## I. **Factual and Procedural Background**

### a. Criminal trial

On September 25, 2006, Michael Goza was convicted in the Cuyahoga County Court of Common Pleas of charges stemming from the sexual assault of two young girls. ECF No. 7-5 at 210-14. During the trial, the jury was presented with evidence of the following facts.

In the early morning of March 26, 2006, at approximately 4 a.m. (ECF No. 7-3 at 9, 155), nine year-old "C.A." awoke to the sight of a man kneeling on her bed. ECF No. 7-3 at 176-77, 200. Her pants and underwear had been removed (ECF No. 7-3 at 179) and the man's hand was on his zipper. ECF No. 7-3 at 177. When he attempted to position himself over C.A.'s body

(1:10CV00675)

(ECF No. 7-3 at 178-81), she curled into a ball and kicked at him.  ECF No. 7-3 at 181-82.  After

C.A. kicked him away for the third time, the man stated he would leave but threatened to hurt her

if she told anyone about the incident.  ECF No. 7-3 at 184.  C.A. saw him take the ladder down

from the top bed of the bunk bed where she slept and walk out of her bedroom.  ECF No. 7-3 at

11, 184-185.  After waiting five to ten minutes, C.A. went upstairs to the room where her mother

and stepfather slept, woke them and informed them about the attack.  ECF No. 7-3 at 185-86.

Upon hearing C.A.'s account of the events, her stepfather, Robert Jarvis, descended the

stairs to check on his 14 year-old stepson, who slept in the basement bedroom, and 3 year-old

daughter, "K.J.", who slept on the bottom of the bunk bed she shared with C.A.  ECF No. 7-3 at

8, 11-13, 17.  Finding them asleep, Robert checked the bedroom belonging to his16 year-old

stepdaughter, "T.A.", which was directly next to C.A. and K.J.'s room on the first floor.  ECF

No. 7-3 at 8, 16-18.  T.A. did not sleep there that night because she was staying at New

Directions, an in-patient drug rehabilitation facility.  ECF Nos. 7-3 at 19; 7-4 at 12.  During his

inspection of the room, Robert felt dampness in the carpeting and on the bed where T.A.'s head

would be if she were sleeping on it.  ECF No. 7-3 at 18-19.  Robert also observed that the

window at the head of T.A.'s bed was, although closed, unlocked, and the screen was pushed all

the way up.  ECF No. 7-3 at 18.  Robert then called the police.  ECF No. 7-3 at 19.

At approximately nine that morning, K.J. awoke, and, in the presence of Robert and her

mother, Coral Jarvis, accused Robert of hurting her vagina.  ECF No. 7-3 at 21, 135-36.  Robert

and Coral again notified the police and were advised to take K.J. to the hospital.  ECF No. 7-3 at

24, 137.  According to the testimony of Kathleen Goellnitz, the nurse at Fairview Hospital who

2

(1:10CV00675)

examined the child, K.J. disclosed that her vagina hurt and a man had put his fingers under her panties.  ECF No. 7-3 at 108.  K.J. stated that her eyes were open and her bedroom was not dark because the television was on.  ECF No. 7-3 at 108.  At one point, K.J. laid on the hospital floor and demonstrated to Goellnitz how she had been harmed.  ECF No. 7-3 at 110.  Although K.J. told Goellnitz that her stepfather had done it, Goellnitz did not believe Robert was the attacker due to the positive interaction she observed between him and K.J.  ECF No. 7-3 at 107, 121-24.

On April 6, 2006, during an interview at New Directions, T.A. informed Detective James McPike of the Cleveland police department about an incident that had occurred earlier.  ECF Nos. 7-4 at 216; 7-5 at 13.  On March 11, 2006, T.A. was required to stay at home because she had experienced an anxiety attack at New Directions.  ECF No. 7-4 at 15-16.  At approximately 2 a.m., T.A. was sleeping in her room when she awoke to find twenty nine year-old Goza sitting on her bed.  ECF No. 7-1 at 343; 7-4 at 32, 41-42.  T.A. had socialized with Goza on two prior occasions: they met at a party when T.A. was fifteen and, in another instance, they smoked marijuana together.  ECF No. 7-4 at 17-30.  Goza had been to the driveway of T.A.'s  house in the past to drop off marijuana for T.A.'s former boyfriend.  ECF No. 7-4 at 80.  T.A. had not, however, invited Goza into her room or house.  ECF No. 7-4 at 50, 53.  When T.A. asked Goza how he had gotten into her room, he responded that he entered through a window.  ECF No. 7-4 at 43.  T.A. observed that one of the windows to her bedroom was slightly open and the screen had been pushed all the way up, although she normally does not position the screen that way. ECF No. 7-4 at 48.  T.A. also observed that Goza could not have entered from the window over her bed because that window was closed and he would have "landed on [her] head" if he climbed

3

(1:10CV00675)

through there. ECF No. 7-4 at 48. Goza began to rub T.A.'s thigh, stomach and breasts, and stated that she "should be [his] girl." ECF No. 7-4 at 44-45. Goza also disclosed that in recent weeks he had been coming to T.A.'s window late at night to see if she was there. ECF No. 7-4 at 46. Although T.A. felt uncomfortable and asked Goza to leave more than once, he stayed in her bedroom for at least twenty minutes. ECF No. 7-4 at 45-46. Eventually T.A. showed Goza out the front door. ECF No. 7-4 at 46. T.A. testified that she did not tell anybody about the encounter prior to speaking with McPike because she was not allowed to see or speak to anyone outside her family during her drug rehabilitation. ECF No. 7-4 at 49.

On April 10, 2006, a fingerprint examiner positively identified a fingerprint extracted on the morning of the attack from the window over T.A.'s bed as that belonging to Goza. ECF No. 7-4 at 99-100, 161-62. The following day, C.A. instantly identified Goza from a six-man photo array presented at her home by Detective McPike. ECF No. 7-4 at 216-20. C.A. also identified Goza as her attacker at trial. ECF No. 7-3 at 193.

At trial, one witness testified in Goza's defense. ECF No. 7-5 at 75. According to Sheari Conner, Goza's fiance, he was in bed with her at 4 a.m. on the morning in question. Conner also admitted, however, that she was asleep at the time. ECF No. 7-5 at 75-76, 90.

At the conclusion of the trial, a jury acquitted Goza of raping K.J. but convicted him on one count of burglary, two counts of aggravated burglary, one count of attempted rape as to C.A., one count of gross sexual imposition as to K.J., and two counts of kidnapping. ECF No. 7-5 at 213. Goza received an aggregate sentence of thirty-one years of incarceration. ECF No. 1-1 at 2.

4

(1:10CV00675)

**b. Post-conviction procedural history**

On appeal to the Eighth District Court of Appeals, Goza asserted numerous assignments of error claiming that his federal constitutional rights had been violated during his trial.  ECF No. 7-1 at 36.  On December 20, 2007, the Eight District affirmed the conviction; *State v. Goza*, 2007 WL 4442742 (Ohio App. 8 Dist.); and the Ohio Supreme Court declined to review the decision. *State v. Goza*, 118 Ohio St.3d 1462, 888 N.E.2d 1114 (2008).  On June 22, 2007, while Goza's appeal was pending, he filed a petition for post-conviction relief at the Cuyahoga County Court of Common Pleas and alleged additional federal constitutional violations.  ECF No. 7-1 at 256-412.  On February 8, 2008, the trial court ruled that all of the issues raised in the petition were barred by *res judicata*, and granted summary judgment in favor of the state.  ECF No. 7-1 at 455-56.  On December 11, 2008, the Eighth District affirmed the entry of summary judgment.  *State v. Goza*, 2008 WL 5182818 (Ohio App. 8 Dist.).  The Ohio Supreme Court declined to review that decision, as well.  *State v. Goza*, 121 Ohio St.3d 1476, 905 N.E.2d 655 (2009).

**c. Federal habeas petition**

On March 31, 2010, Goza filed a Petition for a Writ of Habeas Corpus in this Court.  He asserted four grounds for relief: (1) he was deprived of his liberty without due process of law because the evidence failed to demonstrate that he was guilty of attempted rape; (2) he was deprived of his rights under the Confrontation Clause when the prosecution was permitted to introduce hearsay testimony from K.J. at trial; (3) he was denied effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution because his defense attorney failed to meaningfully challenge the prosecution's case or investigate, develop and

5

(1:10CV00675)

present critical evidence; and (4) the State failed to disclose exculpatory evidence in violation of the Fourteenth Amendment.  ECF Nos. 1, 1-1.

Respondent Robert Welch filed an Answer and Return of Writ on September 3, 2010. ECF No. 7.  In response, Goza filed a Traverse on December 8, 2010.  ECF No. 11.  Oral argument of the issues was held before the United States magistrate judge on October 6, 2011. Subsequently, both parties submitted post-argument briefs.  ECF Nos. 16 and 17.  Respondent has not claimed that Goza failed to exhaust his State court remedies and the Court, upon its own review, has determined that each of the claims presented in Goza's federal habeas Petition were raised and exhausted at the State level on direct or collateral review.  28 U.S.C. § 2254(b)(1).

On December 1, 2011, the magistrate judge issued a Report and Recommendation advising that the Court deny Goza's Petition in its entirety.  ECF No. 18.  Thereafter, Goza filed objections challenging the recommendations of the magistrate judge as to Grounds Two and Three of the Petition.  ECF No. 21.  The Court examines those grounds *de novo*.

## II.  Legal Standard

"[T]he writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness."  *Brecht v. Abrahamson*, 507 U.S. 619, 633, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993) (internal quotations omitted).  Although the scope of the writ has varied throughout our country's history, today "it is designed to guard against extreme malfunctions in the state criminal justice systems."  *Jackson v. Virginia*, 443 U.S. 307, 333, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring).  The United States Supreme Court "has been guided by the proposition that the writ should be available to

(1:10CV00675)

afford relief to those 'persons whom society has grievously wronged' in light of modern concepts of justice." *Kuhlmann v. Wilson*, 477 U.S. 436, 447, 106 S. Ct. 2616, 91 L. Ed. 2d 346 (1986) (*quoting Fay v. Noia*, 372 U.S. 391, 440-41, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963)).

Congress has prescribed, however, clear limits on the granting of the extraordinary relief afforded by the writ of habeas corpus. Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant a petition for a writ of habeas corpus with respect to any claim that was decided on the merits in State court proceedings unless the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "This is a difficult to meet . . . and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt . . . ." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011) (citation omitted; internal quotations omitted). As interpreted by the Supreme Court,

> [u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The *Williams* Court emphasized that a court making the "unreasonable application" inquiry may not

7

(1:10CV00675)

issue the writ simply because it "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the requirement restrains federal courts from disturbing a state judgment "unless the judgment in place is based on an error grave enough to be called 'unreasonable.'" *Lindh v. Murphy*, 96 F.3d 856, 870 (7th Cir. 1996) (Easterbrook, J.), *rev'd on other grounds*, 521 U.S. 320, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997).

A federal district court may designate a magistrate judge to submit recommendations for the disposition of a habeas petition. 28 U.S.C. § 636(b)(1)(B). Where an objection is filed, the federal district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636 (b)(1)(C). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636 (b)(1)(C).

### III. Discussion

#### a. Ground Two - Confrontation Clause

At trial, Lawrence Petrus, a social worker with the Cuyahoga County Children and Family Services, testified that, during an interview, K.J. informed him that a "bad man" pressed his finger against her genitalia and "asked her to hold his penis." ECF No. 7-4 at 128, 137, 141. K.J. did not testify at trial. The magistrate judge recommends that the Court reject Goza's claim that the prosecution's introduction of these statements violated his Sixth Amendment right to confront the witnesses against him. ECF No. 18 at 15-17. In response, Goza argues that K.J.'s statements to Petrus were testimonial in nature, and, therefore, the Eighth District Court of

(1:10CV00675)

Appeals did not reasonably apply United States Supreme Court precedent in ruling that the

admission of these statements passed constitutional muster.  ECF No. 21 at 17-21.

The Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354,

158 L. Ed. 2d 177 (2004) is the controlling authority.  The Supreme Court held that the

introduction of an incriminating statement of an unavailable witness made under police

interrogation violated the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the

accused shall enjoy the right . . . to be confronted with the witnesses against him."  The Supreme

Court also articulated a broader principle: the admission of "testimonial" statements of a witness

who did not appear at trial offends the Confrontation Clause, unless the defendant had a prior

opportunity for cross-examination.  *Id.* at 53-54.  The *Crawford* Court defined "testimony" as

"[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact"

and specified that the term "testimonial" applies "at a minimum to prior testimony at a

preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."  *Id.* at

51, 68.  The Court, however, declined to offer a more comprehensive definition of the word.  *Id.*

at 68.

The Supreme Court expounded upon the principle with greater clarity in *Davis v.*

*Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 3d 224 (2006).  In *Davis*, the Court

examined the statements made by two domestic violence victims who did not testify at trial to

evaluate whether the admission of those statements was prohibited by the Confrontation Clause.

In one case, the victim made statements over the phone to a 911 operator during the course of the

attack.  In the other case, the victim made statements to a police officer at her home after the

(1:10CV00675)

attack subsided.  With respect to the former statements, the Supreme Court held, that the

information obtained by the 911 operator was not testimonial because the victim, in providing

the information, was not attempting to establish or prove some past fact but was describing

current circumstances requiring police assistance.  *Id.* at 827.  In other words, "she was not

*testifying*."  *Id.* at 828 (emphasis in original).  In regard to the latter statements, the Supreme

Court held that all of the statements were testimonial because they were elicited during the

course of a police investigation and were "an obvious substitute for live testimony, because they

do precisely what a witness does on direct examination . . . ."  *Id.* at 830.  In arriving at the

distinction, the *Davis* Court explained that it was guided by the "primary purpose" of the

interrogation:

> Statements are nontestimonial when made in the course of police interrogation
> under circumstances objectively indicating that the primary purpose of the
> interrogation is to enable police assistance to meet an ongoing emergency.  They
> are testimonial when the circumstances objectively indicate that there is no such
> ongoing emergency, and that the primary purpose of the interrogation is to
> establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 822.

The trial court permitted, over defense counsel's objection, the social worker, Petrus, to

testify regarding K.J.'s statements.  ECF No. 7-4 at 141.  The appellate court subsequently held

that these statements were within the hearsay exception set forth in Ohio Evid. R. 803(4)[1] and

therefore admissible.  *State v. Goza*, 2007 WL 442742 at *5.  Prior to engaging in the hearsay

---

[1] Ohio Evid. Rule 803(4) exempts from the hearsay rule "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

(1:10CV00675)

analysis, however, the appellate court cited *Crawford* and determined that K.J.'s statements were

not testimonial.  *State v. Goza*, 2007 WL 442742 at *5.  Although the court did not specify its

reasoning, its decision is still subject to the AEDPA.  *Chadwick v. Janecka*, 312 F.3d 597, 606

(3d Cir. 2002) (Alito, J.) ("§ 2254(d) standards apply when a state . . . court rejects a claim

without giving any indication of how it reached its decision" [internal quotations omitted]).

The appellate court did not unreasonably apply clear federal law as established by the

United States Supreme Court.  The Court disagrees with Goza's claims that K.J.'s statements

were testimonial and that the primary purpose of the social worker's interview was to gather

evidence about a crime.  To the contrary, Petrus testified that the main purpose of his interviews

was to assess the safety of the child, to determine whether the child needed follow-up medical

care as a result of the sexual abuse and to evaluate the type of counseling that may be needed.

ECF No. 7-4 at 129.

Although the record discloses that Detective McPike observed Petrus interview K.J. at the

Jarvis residence[2] (ECF No. 7-4 at 138, 210), the mere presence of a police officer does not

necessarily alter the primary purpose of the interview.  *See State v. Arnold*, 126 Ohio St.3d 290,

302, 933 N.E.2d 775 (2010) ("the fact that police officers watched the interview and that it was

recorded does not change the fact that the statements were necessary for [the child's] medical

---

[2] Goza and the magistrate judge both believe that the state appellate court erroneously determined that McPike was not present for K.J.'s interview.  The Court disagrees.  According to the appellate court's opinion, "[t]he social worker interviewed K.J. alone; Det. McPike only interviewed C.A."  *State v. Goza*, 2007 WL 4442742 at *6.  The record discloses that McPike participated in the questioning when Petrus interviewed C.A. (ECF No. 7-4 at 214) but does not indicate that he said anything during K.J.'s interview.  Thus, the appellate court is not wrong if the word "interviewed" was intended to mean active participation in the interview.

(1:10CV00675)

diagnosis and treatment").  The record does not indicate that McPike asked K.J. any questions.

There is no evidence that Petrus acted as an agent of the police.  Rather, Petrus explicitly

differentiated between his role and that of the police when he stated that "their function is to

determine whether there was a crime or not and whether it needs to be prosecuted.  Our goal,

again, is to assess safety and determine what services the family may need."  ECF No. 7-4 at 133.

Although Petrus acknowledged that he was available to assist the police in conducting interviews

(ECF No. 7-4 at 137-38), the record does not suggest that he obtained information from K.J. for

that purpose.  In fact, Petrus elicited only details concerning the manner in which K.J. had been

sexually abused, which was undeniably relevant to his assessment of what treatment or services

she required.  *See Davis v. Washington*, 547 U.S. at 828 (entrusting trial courts to recognize point

in which nontestimonial statements become testimonial); *see also State v. Arnold*, 126 Ohio

St.3d at 300 (statements made to social worker for medical treatment were nontestimonial but

statements made in same interview for forensic purposes were testimonial).

The Court therefore agrees with the magistrate judge that the state court's decision did

not involve an unreasonable application of the principles enunciated in *Crawford* and *Davis*.

Admittedly, those decisions involve different facts, and do not provide a definitive answer for

every situation in which the testimonial-nontestimonial distinction may be at issue.

Nevertheless, the appellate court's decision is in accord with the Supreme Court's holding that a

testimonial statement is one made in the course of police interrogation during which "the primary

purpose of the interrogation is to establish or prove past events potentially relevant to later

criminal prosecution."  *Davis v. Washington*, 547 U.S. at 822.  While not conclusive, the facts at

12

(1:10CV00675)

bar provide a reasonable basis for the determination that K.J.'s statements fell outside that category.  The Court need not decide whether the state court's decision was correct.  "[W]hen the constitutional question is a matter of degree, rather than of concrete entitlements, a 'reasonable' decision by the state court must be honored."  *Lindh v. Murphy*, 96 F.3d at 871.

Furthermore, even if the decision were unreasonable, the error was harmless.  "[T]he standard for determining whether habeas relief must be granted is whether the . . . error 'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Brecht v. Abrahamson*, 507 U.S. at 623 (*quoting Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946)).  Goellnitz, the Fairview nurse who examined K.J., provided detailed testimony regarding K.J.'s account of the attack.  Her testimony amplified that of Robert and Coral Jarvis who stated that K.J. expressed to them immediately after she woke up that she had been harmed in her vaginal region.  Petrus' testimony was, therefore, cumulative and added little value to the existing evidence of the sexual assault.  The challenged statements, therefore, did not have a substantial and injurious effect upon the determination of the jury's verdict.

### b. Ground Three - Ineffective Assistance of Counsel

Goza objects to the magistrate judge's recommendation that the Court deny the Petition with respect to Goza's ineffective assistance of counsel claims.  ECF No. 18 at 17-31.  First, Goza argues that his trial attorney was ineffective for failing to present evidence of his physical disability.  Second, Goza claims his trial attorney failed to object to the introduction of medical records containing opinions from an emergency room doctor that C.A. and K.J.'s allegations were truthful.  Third, Goza contends that his attorney failed to meaningfully challenge C.A.'s

13

(1:10CV00675)

eyewitness identification of him as her attacker.  Fourth, Goza maintains that his attorney's

failure to present expert testimony in regard to C.A.'s eyewitness identification constituted

ineffective assistance of counsel.  Finally, although Goza does not object to the magistrate

judge's determination that his attorney was ineffective for failing to present evidence that C.A.

first identified another man as the intruder, Goza challenges the magistrate judge's conclusion

that Goza was not prejudiced by this failure.  ECF No. 21 at 22-38.

The Sixth Amendment[3] defines the elements of a fair trial, including an accused's right

"to have the Assistance of Counsel for his defence."  Because the assistance of counsel is vital to

the ability of the adversarial system to produce just results, the Supreme Court has recognized

that "'the right to counsel is the right to the effective assistance of counsel.'"  *Strickland v.*

*Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (*quoting McMann*

*v. Richardson*, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).  Accordingly,

"[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so

undermined the proper functioning of the adversarial process that the trial cannot be relied on as

having produced a just result."  *Strickland v. Washington*, 466 U.S. at 686.

The United States Supreme Court has announced a two-prong test for evaluating an

ineffective assistance of counsel claim:

---

[3] The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district where the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

14

(1:10CV00675)

>First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. at 687.

In considering the performance prong, the test is "whether counsel's assistance was reasonable considering all the circumstances."  *Strickland v. Washington*, 466 U.S. at 688.  A court, when assessing reasonableness, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and the defendant must overcome "the presumption that the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.  Thus, "scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

If counsel was ineffective, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. at 694.  A defendant need not show that counsel's ineffectiveness more likely than not altered the outcome of the case.  *Id.* at 693.  Rather, a reasonable probability "is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  Thus, when a defendant challenges a conviction, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.  A court must, however, consider the totality of the evidence. *Id.*

Notably,

[e]stablishing that a state court's application of *Strickland* was unreasonable under

15

(1:10CV00675)

> § 2254(d) is all the more difficult.  The standards created by *Strickland* and §
> 2254(d) are both highly deferential . . . and when the two apply in tandem, review
> is doubly so . . . .  When § 2254(d) applies, the question is not whether counsel's
> actions were reasonable.  The question is whether there is any reasonable
> argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788, 178 L. Ed. 2d 624 (2011) (citations omitted; internal

quotations omitted).  This analysis does not apply, however, to all *Strickland* claims raised in a

federal habeas proceeding.  When a claim has not been adjudicated on the merits in a state court

proceeding, and has not been procedurally defaulted, the federal habeas court must "look at the

claim do novo rather than through the deferential lens of the AEDPA."  *Jackson v. Houk*, 687

F.3d 723, 732 (6th Cir. 2012) (*quoting Hill v. Mitchell*, 400 F.3d 308, 313 (6th Cir. 2005)).

All but one of Goza's ineffective assistance claims have been resolved on the merits in

state court.  *See State v. Goza*, 2008 WL 5182818; *State v. Goza*, 2007 WL 4442742.  This claim–

that Goza's trial attorney was ineffective because he failed present evidence that C.A. first

identified another person as her attacker–was one of several contentions raised in Goza's state

petition for post-conviction relief.  ECF No. 7-1 at 268.  The Court of Common Pleas ruled that

all of Goza's claims were barred by *res judicata* because they "could have been raised at trial or

have been raised and addressed on appeal."  ECF No. 7-1 at 456.  On appeal, Goza argued that his

claims were not barred by *res judicata* and again asserted that his trial counsel was ineffective for

failing to present evidence regarding C.A.'s identification of another person.  ECF No. 7-1 at 491-

97.  The appellate court affirmed the trial court's decision, but did not address that particular

claim even though it discussed Goza's other contentions.  *See State v. Goza*, 2008 WL 5182818.

The magistrate judge recommends that the claim warrants *de novo* treatment, unimpeded

16

(1:10CV00675)

by the deference required by the AEDPA.  ECF No. 18 at 28.  Goza does not object to this

standard, and this is the approach taken by the Respondent.  ECF No. 16.  Respondent, moreover,

has not brought any procedural default concerns to the Court's attention.  *See Trest v. Cain*, 522

U.S. 87, 89, 118 S. Ct. 478, 139 L. Ed. 2d 444 (1997) (procedural default is not a jurisdictional

matter and "is normally a defense that the State is obligated to raise and preserv[e] if it is not to

lose the right to assert the defense thereafter" [internal quotations omitted]).  Therefore, because

this claim was not resolved on the merits, and since no procedural default issues have been

identified, the Court will evaluate this claim free of AEDPA's constraints.  Goza's remaining

ineffective assistance claims, however, are subject to AEDPA's deferential requirements.

### 1.  Counsel's failure to present evidence of Goza's physical disability

In a letter addressed to Goza's current habeas counsel, Clyde Nash, M.D. wrote that he

reviewed Goza's medical records and believes that as a result of a motorcycle accident in 2003,

Goza "has permanent conditions of significant weakness of his left lower extremity" and "would

be incapable of committing acts that would require anything more than the most simple of

ambulatory functions consistent with his permanent leg paralysis."  ECF No. 7-1 at 289.  Goza

contends this evidence "would have undercut the prosecution's case," therefore, he was deprived

of the effective assistance of counsel because his attorney failed to present it.  ECF No. 21 at 14.

The state appellate court rejected this claim, reasoning:

> Dr. Nash made no analysis concerning Goza's medical history in relation to the
> crime that occurred in this case.  He gave no opinion regarding whether Goza
> could have walked across the parking lot separating his house from C.A.'s and
> climbed into her home through a first-floor window.  Thus, Dr. Nash's letter
> provides no support for Goza's claim that he was too disabled to commit the
> crimes of which he was convicted and, therefore, fails to demonstrate that counsel

17

(1:10CV00675)

was ineffective for not presenting evidence of Goza's alleged disability to the jury.

*State v. Goza*, 2008 WL 5182818 at *4.

The Court accepts the magistrate judge's recommendation that the state court did not apply the requirements of *Strickland* unreasonably.  The evidence showed that Goza lived just a two minute walk away from the Jarvis residence (ECF No. 7-4 at 29), that he broke into the residence two weeks prior to the attack on C.A. and K.J. by climbing through a first floor window (ECF No. 7-4 at 43) and that, although he walked with a limp, he had no difficulty moving about.  ECF No. 7-4 at 52, 233.  Goza's attorney, therefore, chose to not focus the defense of his client upon his capacity to commit the crimes.  Under the circumstances, it was not unreasonable for the state court to conclude that the attorney's decision not to present evidence of Goza's physical impairment and concentrate on more credible defenses was within "the wide range of reasonable professional assistance" he could offer.  *Strickland v. Washington*, 446 U.S. at 689.  Nor was it unreasonable for the state court to conclude that Goza did not overcome the presumption that his attorney's decision was within the spectrum of sound trial strategy.

2.  Counsel's failure to object to introduction of medical records

Goza maintains that his trial attorney was deficient because he failed to object to the introduction of medical records containing opinions from a doctor that C.A. and K.J.'s allegations about the sexual assault were truthful.  ECF No. 21 at 26.  The state appellate court reject this claim, finding that the nurses who examined C.A. and K.J. testified at trial and were cross-examined regarding the children's allegations.  *State v. Goza*, 2007 WL 4442742 at *9.

The Court agrees with the magistrate judge's determination that the admission of these

18

(1:10CV00675)

records were of little consequence.  The girls' accounts of the sexual attack were disclosed

through the testimony of a number of witnesses, including the examining nurses and C.A. herself.

The jury had abundant opportunity conduct its own credibility assessment.  It is improbable that

the jury's evaluation of what it saw and heard was influenced in any material respect by a mere

hearsay opinion contained within a medical record.  It was not unreasonable, therefore, for the

state court to conclude that there was no reasonable probability that the attorney's failure to

preclude this evidence undermined confidence in the result of the trial.

> 3.  Counsel's failure to meaningfully challenge eyewitness identification

Goza argues that his attorney should have moved to suppress C.A's identification of him

as the attacker because the photo array presentation was suggestive.  ECF No. 21 at 27-28.  The

state court found nothing suggestive about the photo array and therefore determined that Goza's

ineffective assistance claim was without merit.  *State v. Goza*, 2007 WL 4442742 at *9.

C.A. identified Goza from a photo array containing six pictures of similarly-looking

Caucasian males with short hair.  ECF No. 17-1.  There is no evidence in the record that the

identification was the result of improper suggestion.  The photo array was conducted at the dining

room of the Jarvis residence in the presence of Detective McPike, Robert Jarvis and Coral Jarvis.

ECF No. 7-3 at 190.  McPike instructed C.A. prior to presenting the array that "it [is] okay if you

don't see the guy in the picture" and "don't feel obligated to pick someone because I [am] [here]."

ECF No. 7-4 at 219.  C.A. identified Goza from the array "within seconds."  ECF No. 7-4 at 220.

C.A. testified that at the time of the presentation, she had not seen Goza anywhere except in her

room during the attack.  ECF No. 7-3 at 192.  She also testified that nobody suggested to her that

(1:10CV00675)

the photo she identified might possibly be the man she attacked her.  ECF No. 7-3 at 199.

Goza argues that T.A., who knew Goza, was present during the photo presentation.  ECF No. 1-1 at 17.  This is untrue.  C.A. stated only that her parents and Detective McPike were present (ECF No. 7-3 at 190) and McPike did not recall T.A. being at the home at all.  ECF No. 7-5 at 38.  Goza also claims that C.A. never saw her attacker's face.  ECF No. 1-1 at 17.  While C.A. did testify that she did not see the man's face (ECF No. 7-3 at 428), she also testified that she was able to identify Goza because "I just felt like it was him and I just knew that it was him."  ECF No. 7-3 at 199.  Furthermore, C.A. had been positioned face-to-face with her attacker (ECF No. 7-3 at 181) and her bedroom had been illuminated by a television set.  ECF No. 7-3 at 195.

Goza argues that Ohio passed a law in 2010 implementing new photo array procedures requiring that the administrator of the array may not know the identity of the suspect.  ECF No. 11 at 27; *see* R.C. 2933.83.  But the trial occurred in 2006.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, *viewed as of the time of counsel's conduct.*"  *Strickland v. Washington*, 466 U.S. at 690 (emphasis added).  This requirement was not in effect at the time of the trial.

According to Goza, the type of array used has been "linked to erroneous identifications."  ECF No. 21 at 27.  Neither the United States Supreme Court nor the Ohio legislature, however, has prohibited the use of photo arrays.  As a matter of fact, "a pretrial identification by photograph will be set aside . . . only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968).

20

(1:10CV00675)

Because the record discloses no indicia of suggestion in the presentation of the photo array, the state court's conclusion did not involve an unreasonable application of *Strickland*.

### 4.  Counsel's failure to call eyewitness or memory expert

Goza claims that the use of an eyewitness or memory expert was necessary to his defense because the identification was made by a child; the identification involved a stranger and was made two seeks after the attack; the circumstances surrounding the event was stressful; and the witness, C.A. testified that she did not see the attacker's face during the incident.  ECF No. 21 at 29.  The state appellate court reject this claim because an attorney's decision whether to call an expert witness "is within the realm of trial tactics."  *State v. Goza*, 2007 WL 4442742 at *9.

"Under Ohio law, defense counsel does not have to hire an expert identification witness. Instead, he may rely on cross-examination and closing arguments to impeach eyewitness testimony."  *Madrigal v. Bagely*, 276 F. Supp. 2d 744, 791 (N.D. Ohio 2003), aff'd, 413 F.3d 548 (6th Cir. 2005).  "[S]killful cross examination of eyewitnesses, coupled with appeals to the experience and common sense of jurors, will sufficiently alert jurors to specific conditions that render a particular eyewitness identification unreliable."  *United States v. Christophe*, 833 F.2d 1296, 1300 (9th Cir. 1987).  At trial, Goza's attorney challenged C.A.'s identification on cross-examination, repeatedly questioning her regarding how she was able to identify Goza if she did not see her attacker's face.  ECF No. 7-3 at 199-200.  He emphasized this point again during his closing argument and argued that C.A.'s identification could not be trusted.  ECF No. 7-5 152-53. The jury nonetheless found sufficient evidence to convict Goza.

While Goza's attorney could have resorted to the use of an expert, he nonetheless chose a

(1:10CV00675)

reasonable and appropriate course of action: to create doubt in C.A.'s identification through cross-examination and closing argument, and by appealing to the jury's common sense.  In reviewing counsel's performance, a court must be "highly deferential," eschew the distorting effects of hindsight and be guided by the principle that ineffectiveness is found when the conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v. Washington*, 466 U.S. at 686 and 689.  The attorney provided a reasonable defense; his actions cannot be said to have been so deficient as to undermine the adversarial process.  The state court's application of *Strickland* was reasonable.

> 5. Counsel's failure to present evidence that C.A. first identified another person

A police incident report describing the police response to the incident reads:

> While gathering information from victim and rept person, ZC 107 found a male matching description of suspect.  He was at Fairview Hospitals E.R. and had signed a 'sign in' label at 0425 hrs (same time as when we received broadcast).  Per 152, Sgt. Gannon, they brought male to the house, where the 9 yr. old victim stated she believed it was him.  She stated she did not get a clear look at the face, but the offenders hair, facial features and pants matched.

ECF No. 7-1 at 280.

This information was also available in an affidavit made by Detective McPike in support of an application for a search warrant.  McPike attested in the affidavit:

> 2. Affiant avers that additional officers responded.  Jane Doe provided a description of the male as a white male, light colored hair, tall and thin, wearing a black hooded sweatshirt and blue jeans.  The officers contacted Fairview General Hospital, which is located across the street from the scene, to inquire whether a male fitting this description was present.  The officers were informed that a male resembling the description had just signed in for treatment.

> 3. Affiant avers that officers brought the male to the scene where a cold stand was conducted.  Jane Doe made a tentative cold stand identification of the male, who

(1:10CV00675)

> was identified as Richard Givens ("Givens"). Givens provided an alibi, which was established as false. Based on the tentative identification and false alibi or information provided by Givens, Given was arrested.

ECF No. 7-1 at 425.

The state appellate court determined that Goza's counsel had access to the foregoing information because the affidavit was admitted during the prosecution's questioning of McPike at a hearing prompted by Goza's counsel. *State v. Goza*, 2008 WL 5182818 at *2. This finding is presumed by this Court to be true as it has not been rebutted. 28 U.S.C. § 2254(e)(1).

Goza argues that his attorney's failure to present this evidence at trial deprived him of effective assistance of counsel. The magistrate judge agrees that the attorney's performance was deficient but nonetheless recommends that the Court deny Goza's claim because the omission did not result in prejudice. ECF No. 18 at 27-31. As discussed, because this claim has not been decided on the merits, the Court will not apply the AEDPA in conducting its *Strickland* analysis.

Preliminarily, the Court accepts the magistrate judge's recommendation that defense counsel's failure to present evidence of C.A.'s identification of Givens was inexcusable even under deferential standards. This conduct cannot be presumed to be trial strategy; counsel was ineffective. The issue then is whether the failure prejudiced Goza. Based upon a review of the record and considering all of the evidence, the Court finds that it did not.

It is important to note at the outset that the magistrate used the incorrect standard in evaluating the prejudice prong of the *Strickland* test. The magistrate judge concluded that Goza was not prejudiced by counsel's failure because he "has not demonstrated a reasonable probability that, had the jury been so informed, the outcome of the trial would have been different." ECF No.

(1:10CV00675)

18 at 31.  The Supreme Court in *Strickland*, however, expressly rejected an outcome-based test.

"The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair,

even if the errors of counsel cannot be shown by a preponderance of the evidence to have

determined the outcome." *Strickland v. Washington*, 466 U.S. at 694.  Rather, the appropriate

standard is whether, but for counsel's error, there was a reasonable probability "to undermine

confidence in the outcome" or that "the factfinder would have had a reasonable doubt respecting

guilt." *Id.* at 694-95.  Even under this standard, however, Goza cannot demonstrate prejudice.

The jury heard evidence eliminating Givens as a suspect.  Givens was detained by the

police because on the morning of the attack he had checked into Fairview Hospital (ECF Nos. 7-4

at 209; 7-5 at 9), which was located across the street from the Jarvis residence (ECF No. 7-3 at 8-

9), and he "loosely" fit the description that C.A. provided to the police.  ECF No. 7-5 at 10.

Subsequently, however, the police determined that he was "pill shopping," that is, he checked into

Fairview in order to obtain prescription painkillers.  ECF No. 7-5 at 35.  He was also not wearing

any dark clothing, contrary to C.A.'s description.  ECF No. 7-5 at 34.  Furthermore, when

Detective McPike searched Givens' car, he uncovered a receipt from a drug store dated March 26,

and displaying a time stamp of 3:57 a.m.  ECF No. 7-5 at 35.  McPike testified that it was

"absolutely impossible" for Givens to get from that store, which was located in Garfield Heights,

to the Jarvis residence in time to commit the crimes in question.  ECF No. 7-5 at 35.

C.A. instantly identified Goza from a photo array displaying a picture of him and five

similar-looking men.  ECF Nos. 7-4 at 220; 17-1.  There is no evidence that C.A.'s identification

was the result of improper suggestion.  C.A. identified Goza as her attacker at trial.  ECF No. 7-3

24

(1:10CV00675)

at 193.  The jury also heard evidence that C.A. had been positioned face-to-face with her attacker and her bedroom was illuminated by the light from a television set.  ECF No. 7-3 at 181, 195.

Furthermore, Goza's fingerprint was found on the window over T.A.'s bed.  ECF No. 7-4 at 99-100, 161-62.  That window was the suspected point of entry, as the screen had been lifted up and the bed beneath the window had been found to be damp.  ECF No. 7-3 at 18-19.  The jury heard additional evidence that Goza had broken into the house two weeks earlier and made sexually unwanted advances towards C.A.'s sixteen year-old sister while she was in bed.  ECF No. 7-4 at 44-46.  T.A. testified that although he entered her bedroom through a window, it was not the window directly above her bed that was the suspected point of entry.  ECF No. 7-4 at 48.

Based on a review of all of the evidence, it is the Court's determination that there is not a reasonable probability that, absent defense counsel's error, a factfinder would have had a reasonable doubt respecting Goza's guilt.  There is not a reasonable probability sufficient to undermine confidence in the jury's verdict in the present case.

## IV.  Conclusion

The Court adopts the magistrate judge's recommendations with respect to Grounds One and Four of the Petition, the recommendations to which Goza did not object.  With respect to Ground Two, Court adopts the magistrate judge's recommendation and overrules Goza's objection, consistent with the reasoning above.  With respect to the claim in Ground Three that Goza was denied effective assistance of counsel because defense counsel failed to present evidence that C.A. first identified another person, the Court adopts the magistrate judge's recommendation, with modifications as to the prejudice analysis, and overrules Goza's objection.

25

(1:10CV00675)

As to the remainder of Ground Three, the Court adopts the magistrate judge's recommendations and overrules Goza's objections, consistent with the reasoning above. The Petition for a Writ of Habeas Corpus is hereby DENIED in its entirety.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.

 December 18, 2012                          _/s/ Benita Y. Pearson_         
Date                                           Benita Y. Pearson
                                             United States District Judge